**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VIVIAN CHAUMONT, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>      v.<br><br>EHANG HOLDINGS LIMITED, HUAZHI HU, RICHARD JIAN LIU, and EDWARD HUAXIANG XU,<br><br>                    Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Vivian Chaumont ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, her counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by EHang Holdings Limited ("EHang" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by EHang; and (c) review of other publicly available information concerning EHang.

## NATURE OF THE ACTION AND OVERVIEW

1.       This is a class action on behalf of persons and entities that purchased or otherwise acquired EHang American Depositary Shares ("ADSs" or "shares") between December 12, 2019 and February 16, 2021, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.       EHang purports to be the world's leading autonomous aerial vehicle ("AAV") technology platform company. Its purported flagship, passenger-grade AAV is called the "EH216."

3.       On February 16, 2021, analyst Wolfpack Research published a research report entitled "EHang: A Stock Promotion Destined to Crash and Burn." Citing "extensive evidence" including "behind-the-scenes photographs, recorded phone calls, and videos of on-site visits to EH's various facilities," the report alleged that EHang is "an elaborate stock promotion, built on largely fabricated revenues based on sham sales contracts with a customer [Shanghai Kunxiang Intelligent Technology Co., Ltd.] who appears to us to be more interested in helping inflate the value of its investment in EH . . . than about buying its products." Wolfpack Research also noted that "in just 14 months as a publicly traded company, EH's PR team has put out 50 press releases

. . . . However, EH's constant stream of press releases are easily proven untrue." Finally, the report alleged that Wolfpack Research "obtained Chinese court records which show that EH's ADRs may already be in serious jeopardy due to legal issues in China."

4.    On this news, the Company's share price fell $77.79, or approximately 62.7%, to close at $46.30 per share, thereby injuring investors.

5.    Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company's purported regulatory approvals in Europe and North America for its EH2216 were for use as a drone, not for carrying passengers; (2) that EHang's relationship with its purported primary customer is a sham; (3) that EHang has only collected on a fraction of its reported sales since its ADSs began trading on the NASDAQ exchange; (4) that the Company's manufacturing facilities were practically empty and lacked evidence of advanced manufacturing equipment or employees; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's shares, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.     Plaintiff Vivian Chaumont, as set forth in the accompanying certification, incorporated by reference herein, purchased EHang shares during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant EHang is incorporated under the laws of the Cayman Islands with its principal executive offices located in China. EHang's shares trade on the NASDAQ exchange under the symbol "EH."

13.     Defendant Huazhi Hu ("Hu") was the Company's Chief Executive Officer ("CEO") at all relevant times.

14.     Defendant Richard Jian Liu ("Liu") was the Company's Chief Financial Officer ("CFO") at all relevant times.

15.     Defendant Edward Huaxiang Xu ("Xu") was the Company's Chief Strategic Officer ("CSO") at all relevant times.

16.    Defendants Hu, Liu, and Xu (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

17.    EHang purports to be the world's leading autonomous aerial vehicle ("AAV") technology platform company. Its purported flagship, passenger-grade AAV is called the "EH216."

### Materially False and Misleading
### Statements Issued During the Class Period

18.    The Class Period begins on December 12, 2019 when EHang's ADSs commenced trading on the NASDAQ exchange. In the Prospectus filed on Form 424B4 with the SEC pursuant to which the Company's ADSs began trading on the NASDAQ exchange, the Company stated:[1]

> We are an autonomous aerial vehicle technology platform company. We are pioneering the future of transportation through our proprietarily developed autonomous aerial vehicles, or AAVs, and related commercial solutions. *We*

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

***believe we are the first in the world to launch passenger-grade AAVs,*** setting a new milestone in the deployment and proliferation of AAV technology.

In today's increasingly populated and interconnected world, traditional modes of urban transportation continue to contribute to congestion and pollution, and they are largely confined to land-based infrastructure. Mobility for the future requires a revolutionary solution. ***While the sky above has always been a possibility, we brought a safe, cost-effective and easy-to-use air mobility solution one step closer to reality when we unveiled our first passenger-grade AAV in 2016. Our AAVs require minimal space for vertical take-off and landing, enabling urban travel to expand to the three-dimensional space.*** We believe AAV technology will transform the future of transportation, improving lives and creating new industries.

We design, develop, manufacture, sell and operate AAVs and their supporting systems and infrastructure for a broad range of industries and applications, ***including passenger transportation***, logistics, smart city management and aerial media solutions. We aim to make it safe and convenient for both passengers and goods to take to the air.

We are the first mover in AAV technology. In January 2016, we unveiled the world's first passenger-grade AAV, EHang 184, a single-seat model, at CES. In March 2018, we delivered a unit of our dual-seat EHang 216 to a customer for testing, training and demonstration purposes. We believe this was the world's first delivery of a passenger-grade AAV. In addition, we have developed a number of non-passenger-grade AAV models suitable for a variety of industrial and commercial applications.

Unlike manually controlled UAVs, our intelligent AAVs can fly and operate autonomously. Our proprietary in-flight operating systems and on-the-ground infrastructure enable reliable and simultaneous control of a large number of AAVs. The operating systems installed on each AAV consist of an autopilot and flight control system, communication systems, a battery management system and a safety management system. Our on-the-ground infrastructure consists primarily of command-and-control systems, handheld and computer-based control units and AAV charging equipment.

*     *     *

As of December 5, 2019, we had cumulatively delivered 38 passenger-grade AAVs for testing, training and demonstration purposes and developed two command-and-control centers for smart city management. ***As of December 5, 2019, we had unfilled purchase orders for 48 passenger-grade AAVs.***

Our core business, air mobility solutions, grew significantly in the first nine months of 2019. Since early 2019, we have accelerated the commercialization of our passenger-grade AAVs in air mobility solutions. In the third quarter of 2019, we

sold 18 passenger-grade AAVs, compared with 17 in the first two quarters of 2019 combined.

Our revenues increased by 109.8% from RMB31.7 million in 2017 to RMB66.5 million (US$9.3 million) in 2018. Our net loss decreased by 7.1% from RMB86.6 million in 2017 to RMB80.5 million (US$11.3 million) in 2018. Our revenues increased by 19.9% from RMB56.0 million in the nine months ended September 30, 2018 to RMB67.1 million (US$9.4 million) in the nine months ended September 30, 2019, and our net loss decreased by 3.9% from RMB49.8 million in the nine months ended September 30, 2018 to RMB47.8 million (US$6.7 million) in the nine months ended September 30, 2019. In 2018, revenues generated by air mobility solutions, smart city management solutions and aerial media solutions were RMB3.1 million (US$0.4 million), RMB30.5 million (US$4.3 million) and RMB31.3 million (US$4.4 million), representing 4.7%, 45.8% and 47.0% of our total revenues, respectively. In the nine months ended September 30, 2019, revenues generated from air mobility solutions, our core business, increased significantly to RMB48.8 million (US$6.8 million), representing 72.7% of our total revenues.

19.    On January 8, 2020, EHang issued a press release entitled "EHang Conducts First-Ever U.S. Trial Flight of Pilotless Air Taxi at North Carolina Transportation Summit." Therein, the Company stated, in relevant part, that "EHang . . . conduct its first-ever U.S. trial flight of its two-seater passenger-grade AAV. . . . This represents the first time that the EHang 216 has received flight approval from the Federal Aviation Administration."

20.    On January 23, 2020, EHang issued a press release entitled "EHang Announces Strategic Partnership with Guiyang, the City of Global Big Data Industry, to set up its Guizhou headquarter." Therein, the Company announced that it had "signed a strategic cooperation agreement with Yunyan District of Guiyang, following the 'Urban Air Mobility' pilot city cooperation with Guangzhou in August 2019." It further stated: "Both sides will settle EHang's headquarter of Guizhou Province in Yunyan District, so as to join hands to develop Urban Air Mobility (UAM) and promote the commercialization of relevant application scenarios."

21.    On March 5, 2020, the Company announced that it had "obtained operational permit for its two-seater passenger-grade AAV, the EHang 216, from the Civil Aviation Authority

of Norway." It went on to tout that "[t]his is the first operational permit for long term testing flight

of EHang 216 in Europe, laying a solid foundation for future urban air mobility (UAM) operations

in other EU countries." The release further provided:

> After the assessment of test flight plans and contingency plans, the CAA Norway issued an operational permit for EHang 216 to conduct flights together with a local customer for the purpose of testing and certification. According to CAA Norway, it believes the country's geographic conditions suit the testing of unmanned aircraft well. Covered with a long strip of land with abundance of sparsely populated areas and free airspace, the country has started to build a network of small airports since 1960's, connecting most territories throughout the country. For the test flight of EHang 216, CAA Norway looks forward to witnessing it at Elvenes airport.

22.    On March 16, 2020, EHang announced in a press release that it had "entered into a

cooperation agreement with the city government of Seville, Spain to execute the first Urban Air

Mobility (UAM) pilot program in Spain." According to the Company:

> The agreement specifies that EHang will work with the Seville government to develop the urban air mobility including passenger transportation, air logistics and command and control platforms in the city. The city will also collaborate on applications for permission to conduct test flights, in accordance with Spanish and European legislation, and will coordinate with EHang in the planning of flight routes.

23.    On March 24, 2020, EHang announced its fourth quarter and full year 2019

financial results in a press release, reporting that for the full year 2019, total revenues increased

83.2%, gross margins were up 7.7 percentage points, operating losses were down 37.7%, and that

sales of passenger-grade AAVs reached 61 units in 2019, up from just 3 units in 2018. It further

stated:

> Mr. Huazhi Hu, EHang's Founder, Chairman and Chief Executive Officer commented: "In December 2019, EHang successfully completed its IPO on Nasdaq and became the world's first publicly traded UAM company, which was a milestone achievement not only for EHang but also for the whole industry. As a new public company, EHang delivered record high quarterly results with impressive financial and operating performance. Our revenues grew significantly, gross margin continued to increase and we achieved first ever quarterly positive operating cash flow and operating profit. Such achievements reflect our strong competitive advantages arising from our global leadership in the UAM industry. Our business

is experiencing some short-term turbulence from the COVID-19 outbreak. These include absence and late return of frontline workers, delayed fulfillment across our supply chain, and the short-term disruption on some of our customers' industries such as tourism. However, this has also created new opportunities for us to explore, such as emergency delivery and rescue. We are confident in the long-term growth and robustness of our business. We are very optimistic about the future of the global UAM industry, which is expected to reach US$1.5 trillion by 2040 according to Morgan Stanley. We are confident that we will keep our leadership in this promising industry."

Mr. Hu continued, "We are the first to enter into commercialization in the global industry. ***Our first-mover advantage has helped us be a pioneer in commercializing AAVs and establishing market standards. Our breakthroughs in the regulatory front, both in China and internationally (e.g. having obtained the first flight permit for the EHang 216 AAV by the Federal Administration of Aviation (FAA) in the US and the first flight permit for the EHang 216 AAV by the Civil Aviation Authority in Norway), have also underpinned our industry leadership and enhanced our customers' confidence globally.*** Leveraging all these, we aim to not just be a technology product provider but a leading UAM platform company offering a comprehensive suite of solutions and services to develop an integrated UAM ecosystem. We look forward to building more partnerships with other businesses, city governments, regulators and investors globally to achieve this strategic goal and benefiting together from fast growing demands for UAM globally."

24.     On April 20, 2020, the Company filed its annual report on Form 20-F with the SEC for the period ended December 31, 2019 (the "2019 20-F"), affirming the previously reported financial results. The 2019 20-F contained certifications signed by Defendants Hu and Liu pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") attesting to the accuracy of the financial results, the disclosure of all fraud, and the effectiveness of the Company's internal controls.

25.     On April 22, 2020, EHang issued a press release announcing the Company's "intention to build the world's first E-port for AAV services." The release continued that:

EHang will cooperate with a local partner in the City of Hezhou in Guangxi Province, China, to build the E-port, which will accelerate the commercialization of EHang AAVs in the tourism industry. The city of Hezhou is a pioneer in air tourism, and this project will make it model for air tourism innovation around the world. The E-port is planned to be completed and operational by around the end of 2020.

The plan includes the ***delivery of 20 units of the EHang 216, the Company's two-seat passenger-grade AAV, which will be deployed for aerial sightseeing***.

The E-port terminal building will be three stories covering 2,500 square meters. Architectural features include a first floor reception hall, second floor passenger waiting area, and a third floor departure/arrival zone. Four landing pads will be located on the roof-top, which can accommodate the landing/take-off of four AAVs simultaneously.

The combination of EHang's AAV technology and the natural tourism resources of Hezhou can promote and enhance Guangxi's air tourism industry not only in Hezhou, but also in other cities in the province.

"Hezhou is a beautiful city with rich tourism resources and we are excited to enhance their appeal with our AAVs. As we progress, we intend to create more commercial applications for EHang AAVs, such as aerial sightseeing that can uniquely merge modern culture and tourism. We also welcome more local partners to join us and embrace the opportunity to a provide safe, autonomous, and green approach to travel and sightseeing," said Mr. Hu Huazhi, the Founder, Chairman and CEO of EHang.

26.     On May 27, 2020, EHang issued a press release announcing that it "obtained the world's first commercial pilot operation approval from the Civil Aviation Administration of China ("CAAC") to use EHang 216 passenger-grade AAVs for air logistics purpose." As a result, "EHang became the world's first AAV company approved by a national aviation authority to carry out commercial pilot operation for the category of 150 kg plus heavy-lift air logistics uses." The release further stated:

EHang Founder, Chairman and CEO Hu Huazhi said, "We are thrilled that the CAAC and EHang took the lead on the world's first commercial pilot operation approval of passenger-grade AAVs for air logistics uses. This approval is of great significance. For EHang, it enables us to enhance our first-mover advantage and accelerate the commercialization of AAV technology and air mobility solutions for logistics. It also lays a foundation for regulators around the world to jointly explore and establish a coordinated, supportive and sustainable regulatory environment. This will benefit the long-term development of the promising Urban Air Mobility ("UAM") applications."

27.     On May 29, 2020, EHang announced its first quarter 2020 financial results in a press release, reporting that total revenues were up 80.3% year-over-year, that gross margins increased 0.8% year-over-year, and that gross profits increased 82.7% year-over-year.

28.     On July 29, 2020, EHang issued a press release announcing that "EHang 216 has obtained a Special Flight Operations Certificate (SFOC) issued by the Transport Canada Civil Aviation (TCCA), the civil aviation authority in Canada." The press release further stated:

> EHang Founder, Chairman and CEO, Huazhi Hu said, "We are pleased to see the EHang 216 receiving such an important certificate from the TCCA, following consecutive flight approvals received from aviation authorities in different countries, including the U.S. Federal Aviation Administration, the Civil Aviation Authority of Norway and the Civil Aviation Administration of China. It conveys a positive signal from global regulators to establish a supportive and sustainable regulatory environment for the UAM industry. As a leader in the industry, EHang will continue to work with our customers and partners to provide safe, autonomous and eco-friendly air mobility solutions to the world."

29.     On July 30, 2020, EHang announced that it would build a new AAV production facility. In a press release, the Company stated;

> EHang Holdings Limited (Nasdaq: EH) ("EHang" or the "Company"), the world's leading autonomous aerial vehicle ("AAV") technology platform company, today announced it will build a new AAV production facility in Yunfu city in Guangdong, China with a planned initial annual capacity of 600 units and an RMB42 million (approx. US$6 million) investment supported by the local government in the facility. The EHang Yunfu facility is aimed to be established as an industry-leading AAV production center, including an R&D facility for air mobility solutions and a training center for operations and technical talents.
>
> *     *     *
>
> EHang Founder, Chairman and CEO, Huazhi Hu said, "The increasing market demands and commercialization of AAVs in China are driving us to expand our production and upgrade our manufacturing capabilities. The EHang Yunfu facility serves as an expansion of our existing facility and will support the growth of our air mobility business in China."

30.    On August 26, 2020, EHang announced its second quarter 2020 financial results in a press release, reporting that total revenues grew 62.7% year-over-year and gross profits increased 60% year-over year.

31.    On December 3, 2020, the Company announced its third quarter 2020 financial results in a press release that stated, reporting that total revenues grew 104.3% year-over-year, gross margins of 59.2%, and gross profit increased by 120.3% year-over-year." EHang also reported that "[s]ales of the EH216, the Company's flagship passenger-grade AAV, reached 23 units in the third quarter of 2020 versus 18 units in the third quarter of 2019." It further stated:

**Business Highlights**

- **Launched the EH216F AAV and intelligent aerial firefighting solution:** In July, EHang introduced the EH216F, the firefighting version of EH216. The EH216F is the world's first large-payload AAV for high-rise aerial firefighting. With a peak altitude of up to 600 meters, it is superior to conventional extinguisher equipment for high-rise fires. Given significant market demand, it has attracted strong interest from emergency management departments and fire departments at national and local level in China.

- **Unveiled the heavy-lift EH216L AAV for aerial logistics:** In September, EHang unveiled another new product, the aerial logistics version of EH216 named the EH216L. The EH216L is a multi-rotor AAV with the record payload capacity. This model opens up more commercial opportunities for various urban and rural aerial logistics uses that require frequent and point-to-point deliveries.

- **Capacity expansion to meet high demand for AAVs in China:** In July, EHang announced that it will build a new AAV production facility in Yunfu, Guangdong. This factory expands upon the current facility in Guangzhou and will support the growth of the air mobility business in China with a planned initial capacity of 600 units of passenger-grade AAVs per annum. The Yunfu factory is designed to be an industry-leading AAV production center and will feature an R&D facility and a training center for air mobility.

- **Obtained the first operational flight permit for passenger-grade AAVs in North America:** In July, the EH216 was awarded a Special Flight Operations Certificate issued by the Transport Canada Civil Aviation with

11

which trial flights have been permitted and are routinely conducted in Québec province, Canada.

- **Joined an international project to develop an air ambulance:** In August 2020, EHang was selected to join Ambular, an important international project supported by the International Civil Aviation Organization, which is dedicated to the development of a flying ambulance for emergency medical uses.

\*        \*        \*

Hu continued, "We are excited by the launch of two new products based on the cutting-edge EH216 passenger-grade AAV technology platform. The EH216F and the EH216L are designed to meet strong market demand for high-rise firefighting solutions and heavy-lift aerial logistics solutions. Both are expected to drive revenue growth in the years to come. With increasing demand and stronger government emphasis on supporting the development of urban air mobility and unmanned civil aviation in China, *we have started to ramp up our production capacity with the new facility in Yunfu.* This is an important step forward as we get ourselves ready for the next phase of growth."

32.      Also on December 3, 2020, EHang held a conference call in connection with the third quarter 2020 financial results. During the call, Defendant Xu, translating for Defendant Hu, stated:

[W]e have already delivered over 100 units of EH216 passenger-grade autonomous aerial vehicles, or AAVs, cumulatively in China and in the world. We have completed near[ly] 10,000 safe flights worldwide with zero accidents. This is an amazing accomplishment for such an innovative passenger-grade AAV. Our proprietary full redundancy safety systems have been fully testified by the abundance of real flights.

33.      Later, during the same call, Defendant Xu continued, translating for Defendant Hu:

Since our current production facility can no longer meet the needs of the mass production, we decided to build a new production facility in Guangdong, Yunfu with an area of 40,000 square meters and the planned initial annual capacity of 600 units passenger-grade AAVs. More important, we will establish a complete set of industry standards and systems from designing, production and operations and will devote ourselves to designing and developing infrastructure, including the automated vertiports so as to gradually establish an integrated operating system like that in existing airports. This is also an important measure to ensure the safe operations of EH216.

Today, we have developed an integrated AAV technology platform with proprietary intellectual properties. Leveraging our experiences and expertise in the fields of hardware, software and supply chains, we will release more AAV models with different payload levels to meet the demands for mid-haul and long-haul flights, thus gradually expanding the operational range of autonomous air mobility.

In terms of new products, while we continue to accumulate potential orders of the EH216F firefighting model, we are accelerating the official certification process. Meanwhile, China's State Council has also proposed to accelerate the industrial upgrade and the practical applications of firefighting unmanned aerial vehicles. The EH216 AAVs, including the passenger version, the firefighting version and the logistics version are expected to be key revenue drivers in the years to come.

In respect of policies and regulations, we are trying to push forward the process. In China, we received an approval from the Civil Aviation Administration of China for airworthiness certification pilot and trial operation programs as early as 2018. Recently, the CAAC announced 13 selected cities as the civil unmanned aviation experimental zones. Just recently in last week, China State Council also urged to include UAM development into the national strategies.

With the government support and a relevant infrastructure upgrade, we will receive airworthiness certificate for EH216 in 2021 and begin to provide commercial operation services. The commercialization of UAM will definitely be realized sooner than expected. So let's embrace the future together.

34.    Also during the December 3, 2020, Defendant Xu, again translating for Defendant

Hu, stated:

In the third quarter, actually, we are experiencing change in our business model or we are adding new market because previously, we have been working as an OEM provider. We are selling our equipment. But we realized that we are going to be operating our system and equipment. So that means, given a lot of this flight data accumulated so far, we are able to provide the real operation by ourselves to our customers.

This is just like 100 years ago when Boeing and Airbus are providing the whole new air transportation to the society. And however, it's different that we are not providing this to the pilots. We are providing the service to every normal person without any flying techniques. So that means we are going to lead, take the lead to launch the operation model.

35.    On December 14, 2020, EHang issued a press release entitled "EHang 216 Receives

Long-term Trial Flight Permit across Austria National Airspace." Therein, the Company stated:

EHang Holdings Limited (Nasdaq: EH) ("EHang" or the "Company"), the world's leading autonomous aerial vehicle ("AAV") technology platform company achieved a significant milestone on the path to offering Urban Air Mobility ("UAM") services worldwide. On December 9, the Civil Aviation Authority of Austria issued a trial flight permit for the EH216 passenger-grade AAV. The permit allows trial operation of full unmanned flights in Austrian national airspace. This is the first flight permit for EHang's passenger-grade AAVs within the European Union.

Through the joint efforts of the Civil Aviation Authority of Austria, the EHang European team, and local partners, the Company has achieved another important regulatory breakthrough in the geographical heart of Europe, enabling more people to experience its safe, green and comfortable UAM solutions. This achievement should enable EHang to accelerate commercial operations in Europe.   The trial permit and flight operations will support EHang's growth in the European Market by demonstrating the benefits of its UAM solutions to regulators, customers, and partners.

Autonomous Aerial Vehicles are poised to change the way people and cargo move from point A to point B. Whether for commuting within a large city or traveling from rural to metropolitan areas, aerial travel will dramatically change how mankind perceives distance and travel time. What is a reality today in Asia also comes closer in Europe.

As part of the process, a test flight occurred in November 2020. It was the first flight ever in open EASA airspace. After a Specific Operational Risk Assessment (SORA) procedure, an EH216 AAV with the registration number OE-VFA took off in St. Martin im Innkreis, in the province of Upper Austria. Under the supervision of the Civil Aviation Authority, the unmanned aircraft took off for several minutes via automatic flight programming and then safely landed, despite harsh weather conditions of severe cold and high wind speed.

36.    On December 28, 2020, EHang issued a press release entitled "EHang Launches Aerial Tourism Services with Strategic Partner Greenland Hong Kong." Therein, the Company announced "the launch of its own autonomous urban air mobility ('UAM') services with its strategic partner Greenland Hong Kong Holdings Limited . . . ."

37.    On December 29, 2020, EHang issued a press release entitled "China's First National Standard for Express Delivery Service by Unmanned Aircraft Jointly Formulated by EHang will be effective from January 1, 2021." In this release, EHang stated:

EHang has proprietarily developed a complete suite of intelligent aerial logistics solutions, including the EH216L heavy-lift AAV for short-to-medium-haul aerial transport, the Falcon medium-sized AAV for urban express delivery, the unmanned aircraft systems, take-off and landing control sites and intelligent self-express service machines. With abundant operating experience, service workflow and practical data, EHang made significant contribution to the groundbreaking for the Standard based on its industry expertise and valuable insights.

With the implementation of the Standard, EHang will continue to accelerate regular operations of its intelligent AAV technologies for aerial logistics, and provide customized solutions for clients from various sectors including logistics, retail, e-commerce and offshore oil and gas by helping them improve efficiency at lower costs.

38.     On January 12, 2021, issued a press release entitled "EHang to Provide UAM Services in Hengqin New Area in Zhuhai, China." Therein, the Company:

[A]nnounced strategic partnerships with Zhuhai Da Heng Qin Pan-Tourism Development Co., Ltd., Zhuhai Huafa Sports Operations Management Co., Ltd. and Flying World (Zhuhai) Technology Co., Ltd. to jointly initiate Urban Air Mobility ("UAM") operations for aerial sightseeing and other air mobility services in the Hengqin New Area, the largest island and a Free Trade Zone in southeast Zhuhai in Guangdong Province of China. By establishing AAV experience centers and a suite of supporting service systems, EHang AAVs will be integrated into the daily life of the local population.

During a signing ceremony held on January 8, a fleet of EH216 AAVs made passenger-carrying flights in Tianqin Park on Hengqin New Area. The flights were seen by local government officials, enterprise representatives, the media and local residents. A total of 36 passengers flew in the autonomous EH216, enjoying safe and comfortable aerial sightseeing trips. Through this event, EHang fully demonstrated its leading-edge technology for the centralized management of simultaneous flights of multiple AAVs in distributed operations under the command-and-control systems.

39.     On January 21, 2021, EHang issued a press release entitled "EHang Joins European Union's AMU-LED Project to Demonstrate Urban Air Mobility." Therein, the Company stated that "[t]hroughout 2022, Ehang will perform trial operations of the EH216, its flagship two-seat passenger-grade AAV, in three countries: Spain, the United Kingdom and the Netherlands."

40.     On January 27, 2021, EHan issued a press release entitled "The World's Leading AAV Provider EHang Wins Urban Air Mobility Call from Paris Region." Therein, the Company

referred to itself as "the only commercialized passenger-grade AAV solution provider and a pioneer of urban air mobility."

41.    On February 5, 2021, EHang issued a press release entitled "EHang to Demonstrate Medical Air Mobility via Participation in EU-supported SAFIR-Med Project." Therein, the Company stated that it "will use EH216, its flagship two-seat passenger-grade AAV, and its Falcon medium-sized AAV to transport medical supplies in urban environment." EHang further wrote:

> Using its expertise and abundant experience, EHang will help formulate a performance assessment and recommendations report, which will refine the current U-space architecture principles, propose operational procedures and mechanisms for an effective interface between Air Traffic Control . . . and U-Space service providers, and suggest a set of Urban Air Mobility . . . indicators to complement the existing smart urban mobility indicators used by European cities.
>
> * * *
>
> Leveraging its past regulatory breakthroughs and comprehensive partnership network, Ehang will expand its global flight tour to more cities and showcase its leading AAV products and solutions in various use cases including passenger commuting and emergency medical transport, etc. As the world's first listed UAM company to achieve global commercialization of its passenger-grade AAVs, EHang is also well positioned to work with all parties to facilitate product innovations and construction of a UAM legal framework in Europe.

42.    On February 8, 2021, EHang issued a press release entitled "Goal to Integrate Unmanned Aerial System Traffic Management into Air Traffic Management," referring to the Company as "the leading passenger electric vertical takeoff and landing (eVTOL) company."

43.    The above statements identified in ¶¶ 18-42 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the Company's purported regulatory approvals in Europe and North America for its EH2216 were for use as a drone, not for carrying passengers; (2) that EHang's relationship with its purported primary customer is a sham; (3) that EHang has only collected on a fraction of its reported sales since its

ADSs began trading on the NASDAQ exchange; (4) that the Company's manufacturing facilities were practically empty and lacked evidence of advanced manufacturing equipment or employees; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

44.     On February 16, 2021, analyst Wolfpack Research published a research report entitled "EHang: A Stock Promotion Destined to Crash and Burn." Citing "extensive evidence" including "behind-the-scenes photographs, recorded phone calls, and videos of on-site visits to EH's various facilities," the report alleged that EHang is "an elaborate stock promotion, built on largely fabricated revenues based on sham sales contracts with a customer [Shanghai Kunxiang Intelligent Technology Co., Ltd.] who appears to us to be more interested in helping inflate the value of its investment in EH . . . than about buying its products." The report stated:

**Out of all the glaring discrepancies we found between EH's claims and reality the massive discrepancies in price between EH's two sales contracts with Kunxiang may be the most outrageous:**

In February 2019 Kunxiang agreed to pay ***RMB450 million for 3 EH216s*** (i.e., RMB150 million per unit), ***almost 100x the price it usually pays***.[] Why would Kunxiang pay 100x the market price for the outdated, low quality (as they described them) EH216? We believe the answer is unrelated EH's products, but the effect these contracts would have on EH's stock price. The unredacted February 2019 sales contract, as shown in EH's draft registration statement filed on September 10, 2019, is shown below:

SALES CONTRACT

Contract No.:

Party A (Seller): EHang Intelligent Equipment (Guangzhou) Co., Ltd.

Party B (Buyer): Shanghai Kunxiang Intelligent Technology Co., Ltd.

The Contract is made by and between Party A and Party B on February 1, 2019 in Guangzhou, whereby Party A agrees to sell and Party B agrees to buy the following products.

**ARTICLE 1. Ordered Products**

| No. | Description of Ordered Products | Unit Price (RMB) (tax included) | Quantity(sets) | Total Price (RMB) |
|-----|-------------------------------|-------------------------------|----------------|-------------------|
| 1 | EHANG Passenger-grade Autonomous Aerial Vehicle (hereinafter abbreviated as "EHANG AAV") | ****** | 3 | ****** |
| **Total price (RMB): Four Hundred and Fifty Million** | | | | ****** |

Just 4 months later Kunxiang signed another contract to purchase 20 EH216s for a total price of RMB 30 million.[] This implies a price of RMB1.5 million per unit, 1/100th of the price from the February contract. A screenshot of the unredacted June 2019 sales contract from the same September 10, 2019 registration statement is shown below:

SALES CONTRACT

Contract No.:

Party A (Seller): EHang Intelligent Equipment (Guangzhou) Co., Ltd

Party B (Buyer): Shanghai Kunxiang Intelligent Technology Co., Ltd

The Contract is made by and between Party A and Party B on June 3, 2019 in Guangzhou, whereby Party A agrees to sell and Party B agrees to buy the following products.

**ARTICLE 1. Ordered Products**

| No. | Description of Ordered Products | Unit Price (RMB) (tax included) | Quantity (sets) | Total Price (RMB) |
|-----|-------------------------------|-------------------------------|----------------|-------------------|
| 1 | EHANG Passenger-grade Autonomous Aerial Vehicle - 216 (hereinafter abbreviated as "EH216") | ****** | 20 | ****** |
| **Total price (RMB): Thirty Million** | | | | ****** |

It is worth noting that these sales contracts are EH's only disclosed sales contracts for to date. although these contracts are worth RMB480 million (~$69 million) in revenue alone, EH has only reported RMB247.3 million (~$35.5 million) in revenue since the beginning of 2019, RMB137.3 million (~$19.7 million), or 54%, has gone uncollected. As EH shuttered its consumer drone business and increasingly focused on its "passenger grade" drones, its percentage of uncollected revenue has increased by more than 20 percentage points.

***We believe EH is using these sham contracts with Kunxiang as the basis fabricated sales that make up most of its total revenue. Based on the reported numbers above, we believe EH has RMB232.7 million (~$33.4 million) left in potentially recordable revenue created by what appear to be sham contracts.*** We further explain EH's accounting issues in the following section.

18

It appears that between September 10, 2019 and its next filing on October 31, 2019, EH realized these massive price discrepancies could expose its farce if seen by investors and therefore filed a confidentiality request with the SEC concealing the prices on these contracts. EH's following registration statements show these contracts with the "Total Price [REDACTED]":

In accordance with Item 601(b)(10) of Regulation S-K, certain information has been omitted in this exhibit 10.15 because such information is both (i) not material and (ii) would be competitively harmful if publicly disclosed.

SALES CONTRACT

Contract No.:

**Party A (Seller):** EHang Intelligent Equipment (Guangzhou) Co., Ltd.

**Party B (Buyer): Shanghai Kunxiang Intelligent Technology Co., Ltd.**

The Contract is made by and between Party A and Party B on February 1, 2019 in Guangzhou, whereby Party A agrees to sell and Party B agrees to buy the following products.

**ARTICLE 1. Ordered Products**

| No. | Description of Ordered Products | Unit Price (RMB) (tax included) | Quantity(sets) | Total Price (RMB) |
|---|---|---|---|---|
| 1 | EHANG Passenger-grade Autonomous Aerial Vehicle (hereinafter abbreviated as "EHANG AAV") | [REDACTED] | 3 | [REDACTED] |
| **Total price (RMB):** [REDACTED] | | | | [REDACTED] |

In September 2019, just ~3 months prior to the IPO, EH and Kunxiang signed a last minute "2020 sales plan" under which Kunxiang was supposed to purchase 105 AAVs from EH in 2020. We believe this was done to create the appearance of rapidly increasing sales heading into EH's IPO. With no other sales contracts disclosed, we can only assume that most, if not all, of the 128 units EHang claims to have "sold" must have been to Shanghai Kunxiang.

**EH's rapidly growing accounts receivable balance is further evidence to us that much of its revenues are fabricated; EH has only collected a total of ~$3.6 million in cash from its purported sales since its IPO:**

EH has only collected cash for 20% of its reported revenues since its IPO, or a **grand total of RMB25.2 million ($3.6 million)**.

While EH has reported RMB125.5 million (~$18 million) in total revenues since its December 2019 IPO, its accounts receivable have increased by RMB100.3 million (~$14.4 million). EH has failed to collect cash for 80% of its total sales, further reinforcing our belief that much of its revenues are fabricated.

45.    The report also alleged that the Company was "misleading investors about its purported 'manufacturing facility' in Yunfu." Specifically, it stated:

**EH Claim #1: It <u>built</u> a new production facility in Yunfu**

We quickly determined this was **false**. While there was a large facility whose exterior resembled the rendering from EH's PR, EH did not build it and it is not new. The Yunfu City Industrial Park Management Committee (the "Park

Management Committee") told us that EH had rented the facility in July and were in the process of retrofitting it. It was formerly part of the Yunfu City Stone Wholesale Market. As shown below, the former occupant's name had been torn off and replaced with an EHang sign:

[Image omitted]

**EH Claim #2: it had already begun production at the Yunfu factory in December 2020:**

After touring the whole building and speaking with numerous personnel on site, we concluded that this claim was also **false**. The Park Management Committee told us construction likely wouldn't be complete until sometime after the Chinese New Year (end of February 2021). Other workers we spoke to didn't know when the renovations would be completed

46.    Wolfpack Research also noted that "in just 14 months as a publicly traded company, EH's PR team has put out 50 press releases . . . . However, EH's constant stream of press releases are easily proven untrue." The report stated:

(i) EH has announced numerous "flight certifications" and "long-term" approvals for its "passenger-grade" EH216 in the US, Canada and various countries throughout Europe.

(ii) According to aviation regulators or experts in aviation regulation in the US, Canada and Europe, EH has only received permits for recreational test flights of its drones in specified areas, below a specified altitude and at a specified time. In no way are these permits endorsements of EH's "passenger-grade" claims, nor are they "regulatory breakthroughs" of any kind.

(iii) EH also claims in an English PR to have received the "World's First Commercial Pilot Operation Approval of Passenger-Grade AAVs for Air Logistics Uses" from China's CAAC. However, the title of the Chinese version of the same PR says nothing about "commercial" or "passenger-grade." What EH obtained was "特定类 无人机试运行批准函" (special approval letter for trial runs of drones of a specified class). CAAC had granted the same license to at least one other company in Hangzhou, China one year earlier in 2019.

(iv) EH consistently makes different claims regarding regulatory approvals in the English and Chinese versions of its press releases. In English, EH makes false claims of commercial approval of its vehicles the EH216 by Chinese regulators. In its Chinese press releases, EH makes false claims of commercial approvals by regulators in the US, Canada, and Europe.

47.     Finally, Wolfpack Research wrote that it "obtained Chinese court records which show that EH's ADRs may already be in serious jeopardy due to legal issues in China." The report elaborated:

> EH Guangzhou, the onshore entity which holds most of EH's assets and operations likely had 95% of its equity frozen by a Chinese court. The basis for this freeze is said to be the "creditor's right to cancel", which means a creditor (in this case a major investment fund in Shenzhen called Join-Share) sued to undo certain questionable transactions EH Guangzhou might have done to reduce assets and avoid debt repayment. ***In other words, a Chinese court could liquidate EH's equity to repay the creditor, rendering its ADRs completely worthless. American investors would be left with no legal recourse against the company or anyone else for their losses.***

48.     On this news, the Company's share price fell $77.79, or approximately 62.7%, to close at $46.30 per share, thereby injuring investors.

## CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired EHang shares between December 12, 2019 and February 16, 2021, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

50.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, EHang's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of EHang shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be

identified from records maintained by EHang or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

51.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

52.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

53.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

        (a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

        (b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of EHang; and

        (c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

54.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

55.    The market for EHang's shares was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, EHang's shares traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired EHang's shares relying upon the integrity of the market price of the Company's shares and market information relating to EHang, and have been damaged thereby.

56.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of EHang's shares, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about EHang's business, operations, and prospects as alleged herein.

57.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about EHang's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's shares to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's shares at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

58.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

59.     During the Class Period, Plaintiff and the Class purchased EHang's shares at artificially inflated prices and were damaged thereby.  The price of the Company's shares significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

60.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding EHang, their control over, and/or receipt and/or modification of EHang's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning EHang, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

61.     The market for EHang's shares was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, EHang's shares traded at artificially inflated prices during the Class Period.  On February

12, 2021, the Company's share price closed at a Class Period high of $124.09 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's shares relying upon the integrity of the market price of EHang's shares and market information relating to EHang, and have been damaged thereby.

62.    During the Class Period, the artificial inflation of EHang's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about EHang's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of EHang and its business, operations, and prospects, thus causing the price of the Company's shares to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's shares at such artificially inflated prices, and each of them has been damaged as a result.

63.    At all relevant times, the market for EHang's shares was an efficient market for the following reasons, among others:

(a)    EHang shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, EHang filed periodic public reports with the SEC and/or the NASDAQ;

(c)    EHang regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on

the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    EHang was followed by shares analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

64.    As a result of the foregoing, the market for EHang's shares promptly digested current information regarding EHang from all publicly available sources and reflected such information in EHang's share price. Under these circumstances, all purchasers of EHang's shares during the Class Period suffered similar injury through their purchase of EHang's shares at artificially inflated prices and a presumption of reliance applies.

65.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

66.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.

The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of EHang who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder
### Against All Defendants

67.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

68.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase EHang's shares at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

69.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the

statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's shares in an effort to maintain artificially high market prices for EHang's shares in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

70.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about EHang's financial well-being and prospects, as specified herein.

71.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of EHang's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about EHang and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's shares during the Class Period.

72.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the

creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

73.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing EHang's financial well-being and prospects from the investing public and supporting the artificially inflated price of its shares. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

74.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of EHang's shares was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's shares were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the

shares trade, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired EHang's shares during the Class Period at artificially high prices and were damaged thereby.

75.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that EHang was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their EHang shares, or, if they had acquired such shares during the Class Period, they would not have done so at the artificially inflated prices which they paid.

76.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

77.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's shares during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

78.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

79.    Individual Defendants acted as controlling persons of EHang within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's

operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

80.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

81.     As set forth above, EHang and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's shares during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 19, 2021

By:  *s/Gregory B. Linkh*
**GLANCY PRONGAY & MURRAY LLP**
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Attorneys for Plaintiff Vivian Chaumont*

**SWORN CERTIFICATION OF PLAINTIFF**

**EHANG HOLDINGS LIMITED SECURITIES LITIGATION**

I, Vivian Chaumont, certify that:

1. I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase the EHang Holdings Limited securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in EHang Holdings Limited securities during the Class Period set forth in the Complaint are as follows:

    (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

2/18/2021

_____

Date

DocuSigned by:

_____
DF4E2411B6B14CB...

Vivian Chaumont

**Vivian Chaumont's Transactions in EHang Holdings Limited  (EH)**

| Date | Transaction Type | Quantity | Unit Price |
|------|-----------------|----------|-----------|
| 2/12/2021 | Bought | 9 | $116.4500 |
| 2/12/2021 | Bought | 8 | $118.5000 |
| 2/16/2021 | Bought | 34 | $115.0000 |
| 2/16/2021 | Bought | 17 | $112.1029 |
| 2/16/2021 | Bought | 17 | $114.4250 |
| 2/16/2021 | Bought | 13 | $114.5000 |
| 2/16/2021 | Bought | 1 | $107.0000 |
| 2/16/2021 | Bought | 1 | $76.7681 |
| 2/16/2021 | Sold | -100 | $68.0000 |